CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

OCT 18 2006

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

STEVEN ROSENFIELD,

and

EDWARD M. WAYLAND,

            *Plaintiffs*,

v.

THE HONORABLE WILLIAM W. WILKINS,
*acting in his official capacity as Chief Judge
of the United States Court of Appeals for the
Fourth Circuit,*

            *Defendant.*

CIVIL ACTION NO. 3:05-CV-00072

**OPINION AND ORDER**

---

    This is a putative class action filed by Virginia attorneys Steven Rosenfield and Edward M. Wayland against William W. Wilkins in his official capacity as Chief Judge of the United States Court of Appeals for the Fourth Circuit. Plaintiffs allege that the Fourth Circuit's procedures for compensating attorneys appointed to represent indigent criminal defendants under the Criminal Justice Act ("CJA") violate class members' Fifth Amendment right to procedural due process because requests for compensation are reduced or denied without (1) an explanation of why the request was not paid in full, (2) advance notice of what work would and would not be compensated, and (3) full and fair opportunity to challenge an adverse fee award. Before the undersigned are a number of pretrial motions. For the following reasons, I deny plaintiffs' Motion for Recusal and grant defendant's Motion To Dismiss. Dismissal renders the remaining motions moot.

## I. Background

First enacted in 1964, the CJA requires that each federal district court, with the approval of the circuit judicial council, adopt "a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section." 18 U.S.C. § 3006A(a). The Fourth Circuit and other courts of appeals have adopted plans to implement the CJA. The CJA includes detailed provisions for the appointment and compensation of attorneys and experts to represent indigent defendants, and for the creation of Federal Public Defender organizations. In 1988, Congress amended the continuing criminal enterprise statute to provide for the appointment and compensation of attorneys and experts to represent indigent defendants in capital cases. See 21 U.S.C. § 848(q)(4)-(10).[1] Plaintiffs treat these provisions as being substantively a part of the CJA. I agree.

Plaintiffs' Amended Complaint alleges that named plaintiff Rosenfield was appointed under 18 U.S.C. § 3006A and 21 U.S.C. § 848(q) to represent an indigent inmate on Virginia's death row in federal habeas corpus appeals to the Fourth Circuit and to the Supreme Court of the United States, and in a clemency petition to the Governor of Virginia. Plaintiff Wayland was Rosenfield's partner and worked on the case as well. When these legal proceedings concluded, Rosenfield submitted vouchers requesting compensation of $35,456.25 for "time reasonably expended" working on the case, based upon $125 per hour, the statutory maximum rate for work on capital cases at that time. See 21 U.S.C. § 848(q)(10)(A). Defendant Wilkins, "acting in an administrative capacity as Chief Judge of the Fourth Circuit," approved payment of only $10,000. Rosenfield moved for reconsideration and then petitioned for *en banc* administrative review. Both requests were denied without explanation.

---

[1] Earlier this year, Congress transferred these provisions to 18 U.S.C. § 3599 without substantive change. See USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, tit. II, § 222, 120 Stat. 192, 231-32.

The Amended Complaint alleges that the Fourth Circuit has no published standards governing fee awards, no rules or procedures for seeking review of the chief judge's decisions, and provides "no fair or full opportunity" to seek review of those administrative decisions. Asserting that Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), gives this court jurisdiction to remedy these circuit court procedural due process violations, the Amended Complaint prays for sweeping declaratory and injunctive relief establishing and enforcing Fourth Circuit standards "for evaluating requests for compensation for fees and expenses under the CJA," and directing Chief Judge Wilkins to reconsider all requests submitted by class members since December 2, 2003.

## II. The Motion for Recusal

The district judge initially assigned to this case recused, declining to invoke the "Rule of Necessity" discussed in United States v. Will, 449 U.S. 200, 213-17 (1980), because a "reasonable observer would not question the impartiality of all Article III judges," as opposed to all Fourth Circuit district judges. Rosenfield v. Wilkins, No. 3:05-CV-00072, at 4 (W.D. Va. Feb. 13, 2006) (recusal order). I was then asked by the Chairman of the Judicial Conference Committee on Intercircuit Assignments if I would accept an intercircuit designation and assignment. I agreed (without reviewing the pleadings), and the Chief Justice designated and assigned me to act as a circuit judge in the Fourth Circuit for this purpose. See 28 U.S.C. § 291.

After defendant's Motion To Dismiss was fully briefed, plaintiffs filed a motion asking me to recuse. While no bias is alleged, plaintiffs assert that my impartiality "might reasonably be questioned," 28 U.S.C. § 455(a), because (i) as a chief circuit judge and member of the Judicial Conference, I am "personally involved in policy-making and administrative practices relating to attorney compensation under the CJA," and (ii) I have made CJA compensation decisions under an Eighth Circuit

plan that is procedurally similar to the Fourth Circuit's plan and therefore I have an "institutional interest" that should preclude me from judging this case.

This motion puts the Rule of Necessity directly in play. Under the CJA, virtually every federal judge exercises primary fee-determining authority. "When representation is provided in the district court, the judge presiding over the proceeding fixes the fees." United States v. Smith, 633 F.2d 739, 740 (7th Cir. 1980), cert. denied, 451 U.S. 970 (1981). When representation is provided in the Eighth Circuit, for example, fee requests are determined by the circuit judge who authored the opinion, with input from the other members of the panel. I become involved as chief circuit judge only in non-capital cases when the panel certifies a fee in excess of the statutory maximum, because in that circumstance the statute requires my additional approval. See 18 U.S.C. § 3006A(d)(3).[2] The Seventh Circuit follows the same practice. United States v. D'Andrea, 612 F.2d 1386, 1387 (7th Cir. 1980). Thus, every Article III judge shares my "institutional interest" in the statutory regime we are required to implement.

The remainder of plaintiffs' argument is, at bottom, an attack on the Committee on Intercircuit Assignments for designating and assigning a chief circuit judge to this case. Plaintiffs apparently believe that chief circuit judges cannot be impartial because we have too much knowledge and experience with the subject matter of their complaint. Without question, I have had greater CJA responsibilities since becoming a chief circuit judge on April 1, 2003. But I was not "personally involved" in formulating the CJA plans and procedures now being implemented by the courts of the Eighth Circuit. Section 455(a) sets forth an objective standard -- whether impartiality might *reasonably* be questioned. See Litekty v. United States, 510 U.S. 540, 548 (1994). Allegations of partiality based upon "a judge's prior participation,

---

[2]The declaration to the contrary submitted on information and belief by an Arkansas CJA panel attorney is simply wrong.

-4-

in a judicial capacity, in some related litigation . . . are meritless in most instances." Id. at 561 (Kennedy, J., concurring). Whether my CJA decisions are administrative or judicial in nature, the allegation of partiality based on these responsibilities is without merit. The Motion for Recusal is denied.

### III. The Motion To Dismiss

Defendant Wilkins moves to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(1), 12(b)(6). His supporting Memorandum of Law first argues that this court lacks jurisdiction to review fee decisions of the Court of Appeals, and that he is entitled to absolute judicial immunity from this suit. These are serious issues, but I decline to consider them because I agree with the additional contention that plaintiffs have failed to state a claim under Bivens.

In Bivens, the Supreme Court held that private citizens have a federal cause of action for damages against federal agents who violate Fourth Amendment rights. While not limiting Bivens to Fourth Amendment claims, the Court in later cases has declined to extend this non-statutory remedy when it infers that Congress has spoken to the contrary. For example, in Bush v. Lucas, 462 U.S. 367, 368 (1983), the Court held that the elaborate and comprehensive statutory remedies available under the civil service system precluded a Bivens damage action by a federal employee who was allegedly disciplined for exercising First Amendment rights. In Schweiker v. Chilicky, 487 U.S. 412 (1988), the Court held that Social Security claimants may not sue government officials under Bivens for alleged due process violations in denying or delaying benefits. The Court explained that the "special factors" precluding a Bivens action include the existence of a statutory remedy, even if it provides incomplete relief, or "indications that congressional inaction has not been inadvertent." Chilicky, 487 U.S. at 423. "Statutory rights and obligations are established by Congress, and it is entirely appropriate for Congress, in creating these

-5-

rights and obligations, to determine in addition, who may enforce them and in what manner." Davis v. Passman, 442 U.S. 228, 241 (1979).

Plaintiffs allege that the Fourth Circuit violated their Fifth Amendment right to procedural due process. This constitutional right exists to protect "property" and "liberty" interests created and defined by independent legal sources, not by the Constitution. Plaintiffs cite no Supreme Court case recognizing a Bivens cause of action for a procedural due process violation, nor has my research uncovered one.[3]

Though money is property, not every claim for a government payment is a property interest protected by procedural due process. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). In other words, "a property right cannot emanate from a mere subjective expectancy." Guerra v. Scruggs, 942 F.2d 270, 278 (4th Cir. 1991), citing Perry v. Sinderman, 408 U.S. 593, 603 (1972). In this case, plaintiffs claim a property interest to full payment of their requested fees for legal services. That interest must be created and defined by the CJA, the federal statute under which they were appointed. For a statute to create a property interest protected by the Fifth Amendment right to procedural due process, "[t]here must be entitlement to the benefit as directed by statute, and the statute must act to limit meaningfully the discretion of the decision-makers." Smith v. Ashcroft, 295 F.3d 425, 429-30 (4th Cir. 2002) (quotation, citation, and emphasis omitted).

Plaintiffs' Amended Complaint alleges their "reasonable expectation that they would be compensated for all time reasonably expended working . . . was a property

---

[3] Davis v. Passman upheld a Bivens claim for an alleged violation of the equal protection component of the Fifth Amendment's Due Process Clause. Equal protection is a substantive right created by the Constitution, like the Fourth Amendment right at issue in Bivens.

-6-

interest protected by the Due Process Clause of the Fifth Amendment." But the Due Process Clause does not protect property *expectations*, however reasonable. See Smith, 295 F.3d at 429-30. The CJA expressly provides that payment will only be made when "funds are available," 18 U.S.C. § 3006A(f). The statute then provides that attorneys who represent indigent defendants should be compensated at or below a maximum hourly rate "for time expended in court or before a United States magistrate judge and . . . for time *reasonably* expended out of court," 18 U.S.C. § 3006A(d)(1) (emphasis added), and that payment above the statutory maximum is allowed in non-capital cases only if "the court in which the representation was rendered . . . certifies that the amount of the excess payment is necessary to provide *fair* compensation and the payment is approved by the chief judge of the circuit," 18 U.S.C. § 3006A(d)(3) (emphasis added). The CJA contains no procedural mandates and no provision for judicial review of adverse fee decisions.

The CJA statutes expressly provide that attorneys will be fairly compensated for time "reasonably expended." See In re Berger, 498 U.S. 233, 234-35 (1991); United States v. Nichols, 184 F.3d 1169, 1171 (10th Cir. 1999). Many reported decisions have held that "the fees allowable under the [CJA] did not, and were not intended to, provide full compensation." United States v. Tutino, 419 F. Supp. 246, 248 (S.D.N.Y. 1976) (reducing six fee requests). "The Criminal Justice Act is in no way an attorney's full-employment act. Congress merely intended that those attorneys who devote themselves to the time-honored tradition of service should not go *entirely* without compensation." Smith, 633 F.2d at 741 (emphasis added).

The CJA's discretionary language and lack of particularized criteria mean that appointed attorneys have no entitlement to the payments they request and therefore no property interest in any particular level of payment. See Smith, 295 F.3d at 430; Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 826 (4th Cir. 1995). Plaintiffs can have no due process cause of action under Bivens unless they have a protected property interest created by the CJA. Yet Congress granted no statutory cause of

-7-

action in the CJA, see, e.g., Shearin v. United States, 992 F.2d 1195, 1196-97 (Fed. Cir. 1993), and the many amendments to this statutory regime confirm that its remedial limitations were not inadvertent. Because Congress in the CJA granted appointed attorneys neither a protected property interest nor a statutory remedy limiting judicial decision-making discretion, I decline to extend Bivens to the Fifth Amendment cause of action asserted by plaintiffs.

## IV. Conclusion

Plaintiffs' Motion for Recusal is denied. Defendant's Motion To Dismiss is granted. Plaintiffs' Amended Complaint is DISMISSED WITH PREJUDICE because it fails to state a claim on which relief can be granted. Let judgment be entered accordingly. The Clerk of Court is directed to send a certified copy of this Opinion and Order to all counsel of record and to Samuel W. Phillips, Circuit Executive of the Fourth Circuit.

Dated: October 17, 2006.

/s/ James B. Loken
James B. Loken, Chief Judge
U.S. Court of Appeals for the Eighth Circuit
Sitting by Designation